# Hardy v. Commonwealth.

(Decided March 10, 1933.)

HENRY F. TURNER for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN —Reversing.

The appellant, Herbert Hardy, known in this record and in the community which he serves as "Pieface" is a man of color and of parts. Not only is he the handy man of the city of Wickliffe upon whom the housewives depend in times of housecleaning and of extra housework and the householder for the matutinal tasks of the yard and basement, but he is also, as he boasts, or shall we in view of the modest way in which he speaks of it, say "admits" the biggest liar in Ballard county. To just what extent this qualifies him for national or even state honors, the record is silent.

During the month of April, 1932, Pieface found employment as a porter and handy man with Mr. Martin Sullivan who ran a store in the city of Wickliffe. The spirits of Pieface were high as befitted the season "of sweet showers" that pierce, as the English poet hath it, the drought of March to the root and give promise of beautiful May flowers. But alas the sisters three were weaving dark colors in the life pattern of Pieface's fate of which he knew not. On one Saturday night in April, 1932, between the hours of 9 and 11, a window screen on the store of Mr. Sullivan was pried open, the window raised, and through the opening thus made, a miscreant passed in, abstracted two sacks of flour and eight to ten dollars in currency and then escaped as he had entered.

Now, it so happened that for some time prior to this breaking and theft, Mr. Sullivan had, in order to stimulate trade in these days of the great depression, adopted a coupon system by which each customer who made a cash purchase was given certificates of the face amount of $1 each to the aggregate amount of the purchase. A customer who had accumulated certificates of the face amount of $15 could then claim 50 cents in cash or merchandise of like value. If the certificates equalled $30 face amount, then $1 would be paid for

them by Mr. Sullivan or merchandise of that value furnished at the election of the customer.

On Sunday following the breaking into the store of Mr. Sullivan, Pieface showed up with $30 in face amount of these certificates. Mindful of the admonition of the Persian poet, "to take the cash and let the credit go," Pieface determined to reduce his scrip to cash and there being then no moratorium, this he was able to do, Mr. Sullivan giving him two 50 cent pieces for the certificates.

On Monday, the grim officers of the law determined to take Pieface into custody, charged with breaking into Mr. Sullivan's store. The only evidence they had against Pieface was his possession on Sunday of these certificates and this did not really amount to any evidence since Mr. Sullivan did not then claim nor has he ever claimed that any certificates were taken on the night his store was broken into. Despite this, these officers pressed Pieface to explain his possession of these certificates which he had cashed. The English Bard has truly observed that conscience doth make cowards of us all and no doubt fearful of the fact that if he told the truth as to the manner in which he came into possession of these coupons he might be prosecuted say for gaming, had he won them in the game so popular among certain members of his race and vulgarly known as the galloping dominoes, or for petty larceny, had he in the manner of Kipling's verse, "what he thought he might require, he went and took," abstracted them from the counter where they were open to him as he worked daily about the store, Pieface resorted to the expedient as the late Judge Durelle expressed it of "lying in his necessary self-defense." He told many and various tales as to how he got these coupons, abandoning when hotly pressed the position he had taken but with masterly sang-froid at once taking up another position to be held and abandoned in like manner. No flour was found in nor traced to his possession. His domestic menage did not require it for Pieface lived in single blessedness, taking his meals out where he would and when he willed. Pieface did have upon him when arrested a $1 bill. While in the case of Pieface this was some evidence of hoarding, it was regarded by the officers as heinous rather because of the fact that he had been given silver for his coupons

and not currency. So they lodged Pieface in the county bastile to await the action of the oncoming grand jury. Of course Pieface's high spirits sank. But imbued with the subconscious memory of the ancient feudal obligation which required the Lord in times of stress and trouble to look after His Man, Pieface called upon the community which he served to stand by and it being too imbued with the spirit of "noblesse oblige" rallied to his support. At its intervention, Pieface was allowed to go on his own recognizance to await the action of the grand jury. In due time he was indicted for storehouse breaking. On the trial, the commonwealth proved that Mr. Sullivan's store was broken into and the flour and eight to ten dollars in currency taken, and that Pieface was later found in the possession of a dollar in currency and some of Mr. Sullivan's coupons, though no one claimed any were missed because of the breaking. Pieface produced evidence to show that during the hours of the breaking, he was playing cards with friends. He claimed that he had gotten the coupons partly by people giving them to him in the store when they made purchases and partly by winning them in card games. He testified that he came into the possession of the dollar bill in this fashion—one Walter Brown whom he was helping to fix a tire on an automobile on Monday following the breaking, wished some cigarettes and he gave Pieface a dollar bill and told him to go to a nearby store and get him a package of his favorite brand. Brown continued to work on the tire whilst Pieface went to the store. Pieface perhaps believing that a dollar bill properly folded would lend an air of verisimilitude to a tale of wealth which the stark realism of two fifty cent pieces would hardly support or perhaps because of loyalty to the gold standard preferred currency to silver. So he used one of his 50 cent pieces wherewith to buy the cigarettes and retaining the dollar bill returned the change and the other 50 cent piece to Brown. In this he is corroborated by Brown. There was ample evidence introduced by the commonwealth in rebuttal to corroborate Pieface in his admission of his prowess as a liar and to establish the fact that perhaps Pieface had communistic tendencies in his disinclination to distinguish between "mine" and "thine." Despite the motion of Pieface for a peremptory instruction, the trial court submitted the question of Pieface's guilt of the offense

charged to the jury. Although, of course, it was from the vicinage, it probably was not vicinal enough and so did not feel that spirit of patient resignation to Pieface's weakness for lying and petty pilfering, the more immediate community did. It promptly found Pieface guilty and sentenced him to serve one year in the penitentiary. Though thus dashed to earth, Pieface rallied and appealed to Caesar. And so he is here. Pending this appeal, he was allowed by the trial court to go abroad under a bond in the penal sum of $500 which was furnished by his employer Mr. Sullivan.

As grounds for reversal, Pieface insists that he was entitled to a new trial because of newly discovered evidence and because the trial court erred in overruling his motion for a peremptory instruction. The newly discovered evidence consisted of an affidavit of Mr. Sullivan to the effect that he does not believe that Pieface is guilty, and that, since the trial, he has discovered some clues which indicate who did commit this crime, but because he is yet investigating them, he does not care to disclose his information for fear of "flushing the covey." It requires no comment to establish the insufficiency of this affidavit to obtain the new trial requested.

However, we believe that Pieface stands on solid ground with reference to his motion for a peremptory. There is no evidence whatever to connect him with this breaking. It is true he was in possession of some of Mr. Sullivan's coupons the day after the breaking. But none were missed because of that breaking and so their possession proved nothing. His possession of a dollar bill could not be tortured into any evidence connecting him with the breaking, especially since that bill was not identified as part of the currency taken and the manner of its obtention was explained without contradiction. While it is true that Pieface's admission as to his lack of truthfulness detracted somewhat from his denial of the commission of this offense, it cannot be considered as a confession that he did do it. The commonwealth produced no "Sharley" to question our Baron Munchausen's * story and so it will have to go uncontradicted, there being no other evidence to call it into question. "While it is true that one may be convicted on circumstantial evidence, such evidence must do more than point the finger of suspicion at the ac-

*See x end of index.

cused." Pardue v. Commonwealth, 227 Ky. 205, 12 S. W. (2d) 288, 289. The Attorney General with his usual commendable fairness and candor admits that the evidence here scarcely points the finger of suspicion at Pieface. In this we concur. The trial court should have peremptorily instructed the jury "to let this servant depart in peace." The judgment is reversed for proceedings consistent with this opinion.